IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No: 1:23-cv-1549

**REBECCA LAWRENCE**, individually and on

behalf of all others similarly situated,

      Plaintiffs,

vs.

**TIMESHARE HELP SOURCE, LLC**, a Colorado Limited Liability Company,
**COURTNEY KIRKPATRICK**, individually,
**CHARLES HEARN**, individually and as CEO, President and Owner of **TIMESHARE HELP
SOURCE, LLC**, a Colorado Limited Liability Company,
**SHERROD BANKS**, individually,
**GARY ADAMSON**, individually,
**DAN HUMAN**, individually and as Director of Operations of **TIMESHARE HELP SOURCE,
LLC**, a Colorado Limited Liability Company,
**SCOTT JACKSON**, individually and as an owner, officer, director, member, and/or manager of
Timeshare Help Source, LLC;
**EDUARDO BALDERAS**, individually and as an owner, officer, director, member, and/or
manager of Timeshare Help Source LLC,
and **JOHN or JANE DOES 1-50**,

      Defendants.

---

## COMPLAINT, CLASS ACTION

---

      **COMES NOW**, Plaintiff Rebecca Lawrence, by and through her attorneys Christensen

Young & Associates, PLLC, and on behalf of herself and all others similarly situated to obtain

damages, restitution and injunctive relief for the Class from Defendants.  Plaintiff makes the

following allegations upon information and belief, except as to her own actions, the investigation

of her counsel, and the facts that are a matter of public record, and avers and alleges as follows:

## PARTIES

1.      Plaintiff Rebecca Lawrence is a resident of Riverside California

2.      Timeshare Help Source, LLC ("THS") is a delinquent Colorado limited liability

company with its primary place of business located in the State of Colorado, County of El Paso

with its principal place of business at 525 N. Cascade Avenue, Colorado Springs, Colorado

80903. THS transacts or has transacted business in this District and throughout the United States.

3.      At all times relevant to this Complaint, acting alone or in concert with others,

THS has advertised, marketed, distributed, or sold timeshare exit services to consumers

throughout the United States.

4.      Upon information and belief, Charles Hearn is an owner, officer or director of

THS, and at all times relevant to this Complaint, acting alone or with other devised a scheme to

defraud timeshare owners of their money.

5.      Upon information and belief, Dan Human or has been an owner, officer, director,

member, and/or manager of the THS.  At all times relevant to this Complaint, acting alone or in

concert with others, Human has formulated, directed, controlled, had the authority to control, or

participated in the acts and practices set forth in this Complaint.  Dan Human maintains the title

of Director of Operations of THS.  Defendant Human manages sales teams and is regularly

present at timeshare exit sales presentations with consumers.  Defendant Human is regularly

present at Corporate Defendants' business premises and directs day-to-day business operations.

He routinely responds to consumer complaints. Defendant Human lists his address as 525 N

Cascade Ave., Colorado Springs, Colorado, 80903, and in connection with the matters alleged

2

herein, transacts, or has transacted business in this District and throughout the United States.

6.      Upon information and belief, Defendant Scott Jackson is or has been an owner, officer, director, member, and/or manager of the THS. At all times relevant to this Complaint, acting alone or in concert with others, Jackson has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Jackson maintains the title of Director and Vice President of THS.  Jackson manages sales teams and is regularly present at timeshare exit sales presentations with consumers.  Jackson regularly is present at Corporate Defendants' business premises and directs day-to-day business operations. He routinely responds to consumer complaints and has been a Vice President of Square One Group, LLC which is another timeshare exit company with numerous complaints.  Jackson lists his address as 525 N Cascade Ave., Colorado Springs, Colorado, 80903, and in connection with the matters alleged herein, transacts, or has transacted business in this District and throughout the United States.

7.      Upon information and belief, Defendant Eduardo Balderas, *aka* Eddie Balderas, is or has been an owner, officer, director, member and/or manager of Corporate Defendants.  At all times relevant to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. He manages sales teams for THS and frequently is present at timeshare exit sales presentations. Balderas routinely delivers initial group presentations at the start of sales meetings with consumers. He also assists directly in selling timeshare exit services to consumers. Balderas regularly responds to consumer complaints. He resides in this District, and in

connection with the matters alleged herein, transacts, or has transacted business in this District and throughout the United States.

8.      Upon information and belief, Defendant Courtney Kirkpatrick is or has been employed by THS as a salesperson in numerous locations, including in Anchorage, Alaska, and Riverside, California. Mr. Kirkpatrick held himself out to be an attorney when discussing the necessity of acting on the spur of the moment with Plaintiff, a violation of C.R.S. § 6-1-707,[1] and lists his residence as Colorado.

9.      Upon information and belief, Defendant Sherrod Bank is or has been employed by THS and other timeshare exit companies and has maintained the title of Director and has been a leader of a sales team known as "Team Alpha," where Plaintiff attended the sales presentation.

10.      Upon information and belief, Defendant Gary Adamson is or has been employed by THS and upon information and belief worked as a salesperson at the September 9, 2021 presentation in Riverside California and works with other similar timeshare exit companies.

11.      Defendants Bank, Kirkpatrick, Balderas, Jackson, Human, and Adamson shall be collectively referred to as Salesperson Defendants and identification of John or Jane Does will be supplemented upon discovery.

12.      Upon information and belief, Defendants have transferred assets to other John

---

[1] C.R.S. 6-1-707. Use of title or degree - deceptive trade practice. (1) A person engages in a deceptive trade practice when, in the course of such person's business, vocation, or occupation, such person: (a) (I) Claims, either orally or in writing, to possess either an academic degree or an honorary degree or the title associated with said degree, unless the person has, in fact, been awarded said degree from an institution.

.

Doe entities and/or individuals with the intent to conceal the assets.

## JURISDICTION AND VENUE

13.    This Court has federal subject matter jurisdiction by authority of Sections 20 and 22 of the Securities Act of 1933 (the "Securities Act") (15 U.S.C. §§ 77t and 77v), Sections 21 and 27 of the Securities Exchange Act of 1934 (the "Exchange Act").

14.    Plaintiff additionally asserts that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1337(a), 1345, and 1355(a); and 15 U.S.C. §§ 45(a) and 56(a)(1).

15.    At all times relevant to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44. 6.

16.    Venue is proper in this district under 28 U.S.C. § 1391(b)(1), (b)(2), (c)(1), (c)(2), and (d), 18 U.S.C. § 1395(a), and 15 U.S.C. § 53(b) (15 U.S.C. §§ 78u and 78aa), and by virtue of Defendants' residency in the State of Colorado.

17.    Defendants, along with John or Jane Does 1-50, are engaged in nationwide timeshare exit scams, directly and indirectly, singularly, and in concert, have made use of the means and instrumentalities of interstate commerce and the United States mails in connection with the transactions, acts and courses of business alleged herein, certain of which have occurred within the States of Colorado and California, wherein lies the principal place of business of THS and is the residence of the individually named Defendants.

18.    Venue for this action is proper in the District of Colorado under Section 22(a) of the Securities Act (15 U.S.C. § 77v(a)), and under Section 27 of the Exchange Act (15 U.S.C. §

78aa), as well as pursuant to 28 U.S.C. § 1332(d)(2) whereas Plaintiff claims and the claims of other members of the Class exceed $5,000,000.00 exclusive of interest and costs,  with class members who are citizens of other states where THS made telephone and mail solicitations.

19.     The Court has jurisdiction over Defendants as they are citizens of the State of Colorado and/or have conducted business within the State.

20.     Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391(b)(1), (b)(2),(c)(2), and(d), 18 U.S.C.  as a substantial part of the event and/or omissions giving rise to Plaintiff's and Class Member claims which arise in this action, or occurred in this District via telephone, mailing and communications which subject Defendants to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

21.     Defendants are engaged in businesses purporting to allow consumers to cancel or "exit" their timeshare agreements with the direction of Charles Hearn who established Timeshare Help Source.[2].

22.     Upon information and belief, Defendants have been cited by the Federal Trade Commission and numerous State authorities with engaging in sham entities which operate fraudulent timeshare exit schemes which target older adults and other timeshare owners.

23.     Defendants use direct mail campaigns, along with telephone solicitations to lure consumers to high-pressure sales presentations at local hotels and restaurants.

24.     Upon information and belief, Defendants mailed flyers to consumers that are governed by Section 16(a)(1) of the Federal Trade Commission Act (FTC Act), (15 U.S.C.§

---

[2] https://www.accesswire.com/628276/Timeshare-Help-Source-Takes-Center-Stage-With-Its-Commitment-to-Quality-and-Integrity

56(a)(1)).

25.    In their literature THS states:

> "If you own a timeshare and you're happy with it, hang on to it!
> However, if you're unhappy or feel like you've made a mistake, we do
> want you to know you're not stuck and you're not alone. Here at
> Timeshare Help Source we do not buy or sell timeshares. Nor, are we a
> listing company. Our company specializes in getting distraught owners
> out of their timeshare contracts and we always provide our 100% money
> back guarantee to every client."

26.    Consumers who attend Defendants' presentations are subjected to hours-long

sessions during which Defendants strongly imply that it is in the consumers and their families'

best interest to pay thousands of dollars to help them get out of their timeshares.

27.    Defendants' sales pitch often will continue for hours until consumers agree to

purchase Defendants' timeshare exit services.

28.    Defendants' presentations start with a group presentation of approximately 40

minutes, followed by individual meetings with Defendants' sales personnel.

29.    During the group presentation, Defendants make misleading and false

representations that suggest they are legitimate companies.

30.    For example, Defendants display the logos of established entities such as

Wyndham Destinations, RCI, LLC, Interval International, Bluegreen Vacations Unlimited, Inc.,

the American Resort Development Association, and the Better Business Bureau, and falsely

represent that Defendants are "Proud Partners" of these organizations or are accredited by them.

31.    Defendants also continue to tout their "accreditation" by the Consumer Rights

Council, an entity actually created by Defendants and its affiliates, to give them an air of

legitimacy.

32.    During the sales presentations, Defendants falsely represent that they are working for, or affiliated with, reputable timeshare exchanges and developers, and that they are one of the few "authorized" or accredited timeshare exit companies.

33.    Defendants also use misleading or false tactics to convince consumers that they must act immediately or be stuck with their timeshares forever, potentially saddling their children and grandchildren with timeshare maintenance fees.

34.    Defendants also stoke consumers' fears by telling them that the timeshare industry has been working against them to pass legislation that will limit their ability to exit their timeshares and will cause annual maintenance fees to increase exponentially.

35.    Having stoked consumers' fears and created a sense of urgency, Defendants then charge consumers an exorbitant upfront fee to "get out of their timeshares."

36.    Defendants typically represent that they will accomplish this within a specified time or fully refund the upfront fee.

37.    Defendants represent that if consumers do not sign up for Defendants' services that day, this one-time opportunity will be lost, and their children and grandchildren will be stuck paying the ever-increasing annual maintenance fees in perpetuity.

38.    Defendants further claim, falsely, that consumers cannot exit their timeshare contracts on their own and that paying for Defendants' services is the only way consumers will be able to exit their timeshares.

39.    Consumers have other avenues by which to exit their timeshares, such as by working directly through their timeshare developer's own exit programs or selling their timeshare on the open market.

8

40.     Defendants also represented to Plaintiff that they would secure Plaintiffs' exit from her timeshare within a specific time or provide her with a full refund.  However, Plaintiff did not want to exit her timeshare and conveyed this information to Defendants who assured her that through their expertise they could maximize her timeshare experience, and thereafter attempted to place her into a class action which would have cost her thousands of dollars in damages.

41.     Nevertheless, Defendants typically do not succeed in helping consumers to get out of their timeshare within the specified time, if at all, and Defendants seldom make good on their promise to refund consumers' fees, as evidenced by numerous scam ratings received by Better Business Bureau's, google, and other online services.

42.     By the end of the group presentation, consumers are desperate to hear how they can get out of their timeshares to prevent saddling their heirs with the growing maintenance fees.

43.     On cue, Defendants then indicate that they can get consumers out of their timeshares within a specified time, generally between one and two years. Defendants further represent that if they fail to secure the exit within the specified time, consumers will receive a full refund of Defendants' fee.

44.     In truth, Defendants are rarely able to secure consumers' exits from their timeshares at all, let alone within the time specified.

45.     Despite that, Defendants have refused to provide the promised full refunds to consumers who seek them, as can be seen in a plethora of complaints filed with Better Business Bureaus across the country.[3] (Exhibit A)

---

[3] https://www.bbb.org/us/co/colorado-springs/profile/timeshare-transfer/timeshare-help-source-0785-

46.    After the group sales presentation, Defendants' salespeople meet with individual consumers to press them to purchase Defendants' exit services.

47.    After intimidating consumers with the foregoing information, Defendants' salespeople typically offer consumers three options:

(1) do nothing and be stuck paying those fees in perpetuity;

(2) labeled an equity trade, to convert their current timeshare into a new timeshare; or

(3) "termination agreement" where Defendants' promise to terminate the consumers timeshare contract once and for all.

48.    Although Defendants provide no explanation as to how they calculate the costs of the three options, they always portray the last option—exit—as the least expensive. As a result, that is the option that many consumers choose.

49.    Not until this point – hours into the group and individual presentations – do Defendants disclose the large upfront fee for their services which typically range from approximately $5,000 to over $80,000 depending on the number of timeshares consumers are seeking to exit and Defendants' "valuation" of each consumer and timeshare.

50.    To allay consumers' fears about the cost of Defendants' services, Defendants repeat the promise that if they do not exit consumers from their timeshares within the specified time Defendants will fully refund their fee.

51.    If consumers hesitate or indicate they are not interested in Defendants' services, Defendants ratchet up the pressure.

52.    In some instances, as with Plaintiff, Defendants tell consumers that if they walk

87382988/details

out the door, their opportunity to exit their timeshare will be lost forever.

53.    In other instances, they try to make consumers feel guilty by accusing them of wasting Defendants' time and just coming for the free meal.

54.    One consumer reported that Defendants' salesperson would not even allow her and her husband to excuse themselves to use the restroom at the same time because the salesperson did not want to give them the opportunity to leave.

55.    At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

56.    Upon information and belief, Defendants mailed flyers to consumers that are governed by Section 16(a)(1) of the Federal Trade Commission Act (FTC Act), (15 U.S.C.§ 56(a)(1)).

*57.*    Upon information and belief, Defendants engaged in telemarketing calls to consumers and are subject to abusive telephone marketing practices for which Congress enacted the Telephone Consumer Protection Act of 1991, (47 U.S.C. §227).(*See,* In the United States District Court for the Eastern District of Missouri, Andrew Perrong v. Timeshaer Help Source, LLC, Dan Human, and Eduardo Balderas, Civil No. 4:22-cv-01064-RWS.)

58.    Timeshare ownership falls within the oversight of the Securities and Exchange Commission, as do the business entities marketing exit schemes for the timeshare securities.

59.    THS and Defendant scammers targeted elderly, and other timeshare owners using deceptive mass marketing direct mail campaigns with promises of a free meal, and a $100 dollar gift card, which had nothing on the gift card, and which constituted another fraudulent

act.

*Rebecca Lawrence's Experience*

60.     Plaintiff, and her daughter, Stephanie, were lured into attendance at Defendants presentation at the Marriot Hotel in Riverside California on September 9, 2021, after receiving Defendants' marketing flyers through the U.S. Mail, which claimed that if Plaintiff attended a free presentation at on September 9, 2021 at the Marriot Riverside Hotel in Riverside California Plaintiff and a guest would receive a dinner for two and receive a gift card.

61.     The flyer further went on to claim that Plaintiff and other timeshare owners, would learn how to permanently eliminate their maintenance fees, learn how to improve their timeshare ownership experience, and learn to legally cancel or exit their timeshares.[4]

62.     Defendants claimed in their flyers that they would explain the consumers' "rights" but that claim was intended to deceive consumers into believing that a law firm, or an attorney, would be present at the presentation.

63.     The flyers also claimed that by attending the September 9, 2021 presentations, the consumer would learn how to permanently eliminate maintenance fees, and how to "optimize your timeshare ownership and maximize your investment."

64.     The statements made in the flyers were designed to bring consumers (customers) to the presentation and the flyer were intentionally designed to be misleading as Defendant have no substantiated method for eliminating maintenance fees and do not teach, and did not teach

---

[4] The flyers contained representations that the consumer would have three choices with their timeshares, 1. Do nothing and keep paying for something you're not using or not utilizing; 2. Optimize their timeshare ownership and maximize their investments, and 3 Exit gracefully and painlessly from your contract, regardless of your situation.

Plaintiff, nor the other attendees, any of the things the scammers promised in the flyers, instead the scammers used deceptive, high-pressure sales tactics to fraudulently require Plaintiff and the other attendees to pay Defendants to allegedly perform these tasks.

65.    The presentation began with a power point slide show and the individual making the presentation spoke very fast and stated that he was a former timeshare owner and knew how to exit or maximize the timeshare product.

66.    After the presentation those in attendance were pressured on a one-to-one presentation.

67.    Plaintiff was introduced to Courtney Kirkpatrick as her designated contact to help her "optimize" (option 2 from the flyer) her current timeshare ownership.

68.    Plaintiff was not seeking to exit her Wyndham VIP timeshare at any time, which she repeatedly reiterated to Defendants.

69.    Defendant Courtney Kirkpatrick informed Plaintiff he was fully aware of the timeshare laws as he was an attorney and he intentionally misrepresented facts, including the alleged "recent court ruling" which was a sunset ruling that unless Plaintiff took action that night, this was a one-time opportunity, that she and her children and grandchildren would be obligated to pay increasing maintenance fees in perpetuity, and Plaintiff would not be able to use her timeshare.  The scheme included statements that if she failed to act the night of her attendance, as that was the last night before the law changed, to use this "loophole," she would be forever precluded from its use.

70.    Defendants, including specifically Courtney Kirkpatrick, fraudulently, intentionally, and with malice, using unfair and deceptive practices, instructed Plaintiff that

13

unless she acted that night, her children, and grandchildren would be burdened for life with the Wyndham timeshare, with the yearly skyrocketing timeshare maintenance fees in perpetuity, and that unless the timeshare payments were made in a timely fashion the timeshare could sue Plaintiff's children, garnish wages, and place a lien against Plaintiffs' daughters' home to collect the maintenance fees.

71.     Defendants additionally, intentionally misrepresented that consumers could not engage in exiting a timeshare on their own without paying for Defendants' services as Defendants were working directly with developers and companies selling timeshares.

72.     Defendants intentionally misrepresented the fact that upon payment that night, Plaintiff would be paying in advance her Wyndham maintenance fees and she and her children could continue to use the Wyndham timeshare indefinitely without having to pay annual maintenance fees.

73.     Defendants THS and Kirkpatrick falsely represented to Plaintiff that the timeshare industry was working to pass legislation to limit her ability to exit her timeshare and to increase annual maintenance fees which would increase exponentially upon passage of the proposed legislation.

74.     Said "proposed legislation" was identified in the Timshare HelpSource document presented to Plaintiff to make a selection from three (3) options, which document is the same document, with the name of Consumer Law Protection and Interval International that was used to scam consumers in Alaska ("House Bill 453 & 7025"). (See Exhibit B, Alaska presentation and Exhibit C presentation to Plaintiff)

75.     Defendant Kirkpatrick used the same scam tactics as he used on Plaintiff with a

couple identified as D.L. in Alaska on a May 2021 presentation. (Exhibit D)[5]

76.    Defendants further misrepresented that they were partners with Interval International, ( a national timeshare exchange company).and that defendants could obtain discount timeshare opportunities with Interval International.  This was not true.

77.    Defendant Kirkpatrick presented Plaintiff with a document which portrayed three options for Plaintiff to select a choice. (*See*, Exhibit C)

78.    The first option was allegedly Plaintiff's current timeshare and falsely identified that there was no exit strategy for her Wyndham Resort timeshare, which was false.

79.    Defendants' presentation related that house Bill 453 (a bill from the 2015 Florida legislative session) would limit Plaintiff's options as it related to her timeshare ownership. Defendants failed to advise Plaintiff that house bill 453 was limited to Florida entities and citizens, even after multiple requests by Plaintiff to explain what, where or how this reflected her ownership interest.

80.    Defendants engaging in unfair and deceptive sales practices further intentionally misrepresented that house bill 7025 (a Florida law) from the 2013 legislative session, would require the timeshare owner to be responsible for all future maintenance fees, special

---

[5] *See*, *State of Alaska v. Consumer Law Protection, LLC, . . .Timeshare Help Source, a Colorado limited liability company,. . .Courtney Kirkpatrick, et. al*, Superior Court for the State of Alaska, Third Judicial District at Anchorage, Case No. 3AN-22-06806 CI, Complaint, at ¶'s 63, ("Specifically, at the May 2021 presentation in Alaska, Defendant Kirkpatrick told a consumer with the initials D.L. that after he and his spouse died, the timeshare company could force their children to continue paying the maintenance fees.  Kirkpatrick claimed that Consumer Law Protection, LLC ("CLP") would file a lawsuit on D.L.'s behalf to prevent that from happening, but only if D.L. entered into a contract with CLP that day. D.L. paid $16,521 to CLP that day, but CLP did not get D.L. out of the timeshare, nor did it file a lawsuit.  In fact, CLP could not file a lawsuit on D.L.'s behalf, because CLP is not a law firm.").

assessments.  In fact the legislation was aimed at third party timeshare exit companies, such as THS, and not owners.

81.    The Florida law that was passed regarding timeshare legislation was apparently directed at transfer companies, such as THS, which convince timeshare owners to pay large upfront fees in exchange for removing their name from the property title, also referred to as "Viking Ship" legislation passed by the Florida legislature in 2015.[6]

82.    Repeated references were made to the timeshare laws, and current cases in court that were changing Plaintiffs ability to exercise her timeshare owner rights, and be potentially liable for maintenance fees even after her death.

83.    Plaintiff alleges that Defendants began the presentation by reviewing a law passed to provide an exit strategy from timeshares and provide a better way of traveling using the equity from her timeshares, but Plaintiff had to exercise that right that night.  Three options were presented: 1. Retain current contract. 2. Equity Trade – use existing equity with additional funds to pay forward maintenance fees thus terminating annual fees while retaining use of Wyndham points and use of the Wyndham website. 3. Terminate ownership of timeshare. Plaintiff chose Option 2 to retain Wyndham ownership with over 300,000 points and prepay maintenance fees.

84.    Defendants intentionally mislead and misrepresented Plaintiff that prepayment of maintenance fees would be a viable path to maximize timeshare ownership, and that was one of the reasons for their presentation to show timeshare owners how to maximize their timeshare ownership.in that very fashion.  This was a known misrepresentation made to Plaintiff that the

---

[6] https://www.timeshare.com/us/en/resources/timeshare-exit-scams/2020/timeshare-owner-warning-viking-ship-exit-schemes

best way for her to proceed was through selection of "Option 2" as set forth in the sales presentation.

85.    As explained to Plaintiff by Defendants, Option 2 would allow Defendants to upgrade Plaintiffs' membership in Wyndham Resorts to a Gold membership.

86.    Plaintiff already had a VIP Silver membership in Wyndham Resorts at the time of the presentation.

87.    Plaintiff was further mislead that there would be "NO Future Maintenance Fees;" and that Plaintiff and her daughter could have "Unlimited Annual Travel;" and there was a "Walk-a-Way Clause" [sic] which would allow her to terminate her ownership with no notice or payment of any termination fees.

88.    As Defendants desired in their presentation, along with the and one-on-one discussions, Plaintiff did not understand the different options presented, as the options were intentionally misleading.

89.    Plaintiff instructed Defendants that she wanted to retain her Wyndham timeshare and prepay her maintenance fees under Option 2 which Defendant Kirkpatrick indicated was one of the ways to "optimize" Plaintiff's ownership. (Exhibit E)

90.    Defendant Kirkpatrick intentionally misrepresented that the selection by Plaintiff of prepaying her maintenance fees, under Option 2 was something they could perform under option 2, and further misrepresented the costs associated with said selection, as well as requiring Plaintiff to make payment to Defendants before she left the hotel since this opportunity was *only valid through the date of the presentation*.

91.    Plaintiff was at her wits end, and tired after spending five hours with

Defendants.

92.    Defendant Kirkpatrick had Plaintiff make out a check to Timeshare Help Source in the sum of thirty-six thousand nine hundred forty-five dollars ($36,945.00).

93.    After Defendant Kirkpatrick consulted with another Defendant employee of THS regarding the transaction, Plaintiff was instructed in order to make the transaction work Plaintiff needed to make out two separate checks, one in the amount of eighteen thousand five-hundred thirteen dollars ($18,513.00) Exhibit F, and an additional check for eighteen thousand four-hundred thirty-two dollars ($18,432.00) Exhibit G.

94.    Defendants failed to explain why two checks were needed to consummate the transaction.

95.    After attending the presentation, Plaintiff became ill and was admitted to the hospital the following day.

96.    While still in the hospital Plaintiff was concerned about the Defendants presentation and sent a text cancelling the "sale" by sending the following email to THS and Defendant Kirkpatrick:

> **From:** Becky Lawrence <beckymlawrence@gmail.com>
> **Date:** September 13, 2021 at 4:15:51 PM PDT
> **To:** Timeshare/CourtneyKirkpatrick <C.Kirkpatrick@timesharehelpsource.com>
> **Subject: Rebecca Lawrence**
>
> Hi Courtney,
> This is Rebecca Lawrence from the meeting at the Marriott in Riverside, CA Sept. 9. We  were texting Friday to answer my questions, but did not get to  finish.  Then over the weekend  I was admitted to the hospital. Today, Monday Sept. 13, 2021 I am still in the hospital.  I did not have an opportunity to finish collecting information I feel I need. Therefore, per the state of California 3 day cancellation law, I am cancelling this agreement.  If your company will extend to me  additional time, I am still interested. Please pass this along to whomever needs this information.  Let me know what the decision is.

Rebecca Lawrence  (Exhibit H.)

97.     On, or about September 15, 2021, Defendant Kirkpatrick responded to the notice of cancellation received from Plaintiff, by acknowledging receipt of the email and responding that the drop-dead deadline that he had pushed in the presentation on September 9, 2021 could be extended in her situation, and further reinforced his fraudulent statements about some alleged law that if she canceled it count not be reinstated later.

98.     In the text to Plaintiff, in an attempt to dissuade Plaintiff from following through with the cancellation she had made, Defendant Kirkpatrick stated, "Becky, I just got your email. You do have the right to cancel. Yet, if you cancel, it cannot be reinstated later per law.  Now if you just simply need more time, I can make that happen for you."

99.     In a similar text on the same date to Plaintiffs' daughter Stephanie, Defendant Kirkpatrick, continuing to misrepresent facts and in an attempt to circumvent the cancellation, said,

> Just giving you a heads up. Your mom sent me an email saying she was in the hospital.  She stated she wants to cancel.  But is still interested.  I will screen shot what her and I said.  I know she had a lot going on going into the hospital.  But if we cancel it cannot be reinstated later. If she just needs more time due to the money, I understand and will help all I can.  (EXHIBIT I)

100.     Plaintiff repeatedly specified in texts, emails and telephone conversations with Defendants during the ensuing months, as early as October of 2021, that she was NOT interested in terminating her timeshare with Wyndham, and reiterating that she did not want them to do anything except return her money. (Exhibits J and K)

101.     In addition to the September 13, 2021 text she had emailed to Defendants cancelling the transaction, Plaintiff sent copies of every document she had signed the night of the

presentation with the notice of "cancelled" and dated.

102.    Defendants continued in a three-shell monte game with Plaintiff for the next several months, one person saying one thing and another person saying something different about returning part of her payment, saying they completed their job, all with the end game to keep Plaintiffs' money.

103.    Even after receiving the initial cancellation, Defendants received written notice of cancelling her contracts based upon misrepresentation, fraud, deceptive trade practices, Defendants continued to attempt to push through one of its subsidiaries Consumer Law Protection, LLC, that Plaintiff was being placed in a class action settlement with Wyndham, even though Plaintiff adamantly expressed she did not want to be a part of that class action settlement.

104.    Defendants continued the scam by sending emails and texts to Plaintiff stating they would refund her money, and Defendants refused to follow through on any of their misrepresentations.  For example on January 24, 2022 Plaintiff contacted Dan Human and asked for her refund of $36,0557(Exhibit L).

105.    On January 24, Defendant Dan Human responded that his supervisor Defendant Scott Jackson, had given Dan the authority to make a fair settlement with Plaintiff.

106.    On January 26, 2022, Defendant Dan Human admitted that Plaintiff never signed the contract to purchase Interval International (II) points and suggested that from the $18,432.00 check that Defendants had taken from Plaintiff for the alleged Interval International  points, which were never processed, as evidence of the text, that Defendants would keep five thousand four-hundred thirty two dollars ($5,432.00), for doing nothing more engaging in deceptive business practices, fraud, misrepresentation and various other illegal and unethical practices

(Exhibit M).

107.    Plaintiff further submits that in January of 2022 she sent to Defendants, via certified mail, email and texts, cancellations of all documents prepared by Defendants, including a limited power of attorney. (EXHIBIT N)

108.    After January of 2022, and as late of September 11, 2022, Defendants continued to use the invalid power of attorney with its fellow affiliates, including, but not limited to Square One Development Group and Consumer Law Protection who, along with Defendants THS, represented to the Court and Wyndham that they were the attorneys for Plaintiff and enrolled her in a class action settlement that would terminate all of Plaintiffs VIP rights and her timeshare interest with Wyndham. (Exhibit O)

## COMMON ENTERPRISE

109.    THS, along with the individually named Defendants have operated as a common enterprise with other similar entities, including, but not limited to Consumer Law Protection, LLC, Square One Development Group, and other affiliate scamming entities, while engaging in the deceptive, unfair, and unlawful acts and practices alleged herein.

110.    THS and its Directors, Officers and employees have conducted the business practices, are also members, employees, or officers and owners of the other affiliated groups described below through an interrelated network of companies that have common ownership, officers, managers, business functions, employees, and office locations, and that have commingled funds from consumers.

111.    Because Defendants have operated as a common enterprise, each of them is

jointly and severally liable for the acts and practices alleged below.[7]

112.    Defendants are owners, shareholders, members of limited liability companies, employees, officers or directors in numerous timeshare exit companies who are also under federal and state investigation for engaging in fraudulent, false and deceptive trade practices, many times using the same or similar flyers, direct mail and email publications used by the entities operating under the umbrella coverage of a parent entity.

113.    Other pending litigation notes that Defendants, and their affiliates, have taken over $90 million from consumers using the scam techniques, tactics, misrepresentations and deceptive business practices as alleged herein.[8]

114.    Defendants' conduct took place in connection with the offer, purchase and/or sale of securities, and advance fee payments within multiple jurisdictions, and specifically the Districts of California and Colorado.

_____

[7] *See, State of Alaska v. Consumer Law Protection*, footnote 2, *supra*; s*ee also, United States of America and State of Wisconsin, v. Consumer Law Protection, LLC, . . . Timeshare Help Source, LLC, et. al.;* US District Court for the Eastern District of Missouri Eastern Division, 4:22-cv-01243, Defendants use direct mail campaigns to lure consumers to high-pressure sales presentations at local hotels and restaurants. During these sales presentations, Defendants falsely represent that they are working for, or affiliated with, reputable timeshare exchanges and developers, and that they are one of the few "authorized" or accredited timeshare exit companies. Defendants also use misleading or false tactics to convince consumers that they must act immediately or be stuck with their timeshares forever, potentially saddling their children and grandchildren with timeshare maintenance fees. Having stoked consumers' fears and created a sense of urgency, Defendants then charge consumers an exorbitant upfront fee to get out of their timeshares. Defendants typically represent that they will accomplish this within a specified time or fully refund the upfront fee. In fact, Defendants typically do not succeed in helping consumers to get out of their timeshare within the specified time, if at all. And Defendants seldom make good on their promise to refund consumers' fees.

[8] https://www.ftc.gov/business-guidance/blog/2022/11/ftc-wisconsin-aim-show-deceptive-timeshare-exit-claims-exit

## CLASS ACTION ALLEGATIONS

115.    Plaintiff brings this action pursuant to Federal Rules of Civil Procedure, Rule 23, individually and on behalf of all others similarly situated, who are or will be threatened with injury arising from Defendants' actions, as more fully described herein (the "Class").

116.    Plaintiff brings this action on her own behalf, and on behalf of all other persons similarly situated ("the Class").  The Class that Plaintiff seeks to represent includes:

> A.  All persons who were contacted via mass direct mailings, telemarketers, or other means of marketing, disseminating, circulating, or placing before the public, an advertisement, announcement, statement or representation of any kind, which contained any assertion, representation or statement of fact which was untrue, deceptive or misleading regarding usage, exiting, improving or otherwise directed at manipulation of individuals owning a timeshare product;
> B.  Individuals who attended a presentation offered by Defendants at facilities rented on a temporary or short-term basis, such as a hotel or motel rooms, convention centers, restaurants, etc. where the consumers underwent high pressure sales for more than $130.00 and Defendants failed to inform the consumers of their right to cancel the purchase, pursuant to 16 C.F.R. § 429.0(a), which mandates that Defendants present the consumer/buyer with a fully completed receipt or copy of any contract pertaining to such sale at the time of its execution which must contain a statement summarizing the buyer's right to cancel within three business days. 16 C.F.R. § 429.1(a);
> C.  Individuals who Defendants failed to inform buyers about cancellation rights at the time of the sale by giving the buyer two copies of a cancellation form that includes the required caption and notice language. 16 C.F.R. § 429.1(b) and (c);
> D.  Individuals who Defendant sellers failed to receive a contract, or copy of a contract which included a waiver of the rights to which the buyer is entitled under the Cooling-Off Rule, including specifically the buyer's right to cancel the sale in accordance with the Cooling-Off Rule. 16 C.F.R. § 429.1(d);
> E.  Individuals to whom Defendants made material misrepresentations regarding the buyer's right to cancel the transaction. 16 C.F.R. § 429.1(f);
> F.  All individuals who were approached by Defendant sellers of consumer goods and services(timeshares) who failed to make certain disclosures in mail solicitations and during face-to-face solicitations that occurred away from seller's regular place of business regarding timeshare products, regulations, and exit strategies;

      G.  All persons who have, or had a timeshare product from January 2017 through the present and were approached by Defendants, Defendants employees, owners, managers, sub-contractors or any entity used to secure payment from Plaintiffs to optimize timeshare ownership, maximize timeshare investments, exit timeshare ownership, negotiate with timeshare entities to eliminate or terminate timeshare obligations.

      H.  All persons who have been financially harmed or damaged because of Defendants fraudulent conduct, paid improper fees, were told that unless they acted that day the law was changing and they could not obtain the relief suggested by Defendants, Defendants made improper overcharges, Defendants failed to return calls, or place Class members on extended hold and then dropped the calls, caused Class members to sustain a loss of time and bank charges, collection costs, and/or other miscellaneous costs and damages.

117.    Excluded from the Class are Defendants; officers, directors, and employees of Defendants; any entity in which Defendants have a controlling interest; the affiliates, legal representatives, attorneys, heirs, and assigns of these Defendants.

118.    The members of the Class are so numerous that the joinder of all members is impractical.

119.    While the exact number of Class members is unknown to Plaintiff at this time, based on information and belief, it is well over a hundred thousand.

120.    There is a well-defined community of interest among the members of the Class because common questions of law and fact predominate, Plaintiffs' claims are typical of the members of the Class, and Plaintiffs can fairly and adequately represent the interests of the Class.

121.    This action satisfies the requirements of Federal Rules of Civil Procedure, Rule 23(b)(3) because it involves questions of law and fact common to the members of the Class that predominate over any questions affecting only individual members, including, but not limited to:

a.   Whether Defendants, jointly and severally, unlawfully used, maintained, manipulated, flost or disclosed Class members' personal and/or financial information

b.   Whether Wells Fargo created a hostile working environment which fostered and rewarded fraudulent actions by its employees;

c.   Whether all Defendants violated the requirements of both Colorado and California laws;

d.   Whether all Defendants' conduct was negligent, and/or grossly negligent;

e.   Whether all Defendants acted willfully and/or with oppression, fraud, malice, or indifference to the consequences to Plaintiffs;

f.   Whether all Defendants' conduct constituted intrusion;

g.   Whether Defendants' conduct constituted public disclosure of private facts;

h.    Whether all Defendants' conduct constituted misappropriation of likeness and identity;

i.   Whether all Defendants' conduct violated Class members' Colorado and California Constitutional Right to Privacy;

j.   Whether all Defendants' conduct constituted bailment and breach of contract;

k.   Whether all Defendants' conduct constituted conversion;

l.   Whether Plaintiffs and the Class are entitled to damages, civil penalties, punitive damages, and/or injunctive relief;

m.   Whether Plaintiffs and Class Members are entitled to declaratory and injunctive relief;

n.  Whether THS Management engaged in theft of customers funds;

o.  Whether Defendants actions constituted a pattern of racketeering in violation of 18 U.S.C. §§'s 1961 *et seq*., the Racketeer Influenced and Corrupt Organizations Act (RICO);

p.   Whether Defendants actions constituted violations of the Fair Credit Reporting Act (FCRA) 15 U.S.C. § 1681, *et seq*.;

122.   Plaintiffs' claims are typical of those other Class members who have likewise been subjected to financial harm or damages, loss of time, credit damage, and/or other miscellaneous costs and damages.

123.   Plaintiff will fairly and accurately represent the interests of the Class.

124.   The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants and would lead to repetitive adjudication of common questions of law and fact.

125.   Accordingly, class treatment is superior to any other method for adjudicating the controversy.

126.   Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action under Rule 23(b)(3).

127.   Damages for any individual class member are likely insufficient to justify the cost of individual litigation, so that in the absence of class treatment, Defendants' violations of law and fraudulent conduct inflicting substantial damages in the aggregate would go un-remedied without certification of the Class.

128.    Defendants have acted or refused to act on grounds that apply generally to the class, as alleged above, and certification is proper under Rule 23(b)(2).

129.    This action is properly maintainable as a class action for, *inter alia*, the following reasons:

a.    Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.

b.    Plaintiff is an adequate representative of the Class.

c.    A class action is superior to any other method available for the fair and efficient adjudication of this controversy since it would be impractical and undesirable for each of the members of the Class, who have suffered or will suffer damages, to bring separate actions, in multiple jurisdictions.

d.    Section 5(a) of the FTC Act, 15 U.S.C.§45(a) prohibits "unfair or deceptive acts or practices in or affecting commerce." Misrepresentations or deceptive omissions of material facts constitute deceptive acts or practices prohibited by Section 5(a).

e.    The California Consumer Protection Act (CCPA) regulates false advertising and regulates mass marketing of non-solicited materials. (California Business and Professions Code §17500)

f.    Under California's False Advertising Law, making false or deceptive statements in any advertisement is actionable.  Under this law it is illegal to make false or deceptive statements in any advertisement.  For

purposes of the law, advertisement applies to any medium used for advertising, including print ads; television commercials; radio advertisements; email campaigns; direct mail; and telemarketing.[9]

g. Colorado, likewise prohibits false or misleading representations and deceptive trade practices, *see* Colorado Consumer Protection Act (CCPA), Chapter 29; CRS § 6-1-105 *et seq*.[10]

h. Defendants practices are unfair under Section 5 of the FTC Act if they cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition. 15 U.S.C. § 45(n).

## FIRST CLAIM FOR RELIEF
### MISREPRESENTATION AND DECEPTIVE SALES PRACTICES

---

[9] Ca Code BPC 7, Part 3, Chapter 1, 17500 *et seq*. It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known.

[10] The CCPA is not an exclusive remedy. C.R.S. § 6-1-105(3), A private cause of action under the CCPA is cumulative of other statutory and common-law remedies, and a "plaintiff may bring both 'CCPA and other causes of action based on the same facts.'" *Hall v. Walter*, 969 P.2d at 237 (quoting *Lexton-Ancira Real Estate Fund, 1972 v. Heller*, 826 P.2d 819, 823 (Colo. 1992)).

130.    Plaintiff incorporates by reference the preceding paragraphs as if set forth in full particularity herein.

131.    The actions of Defendants in their presentation on September 9, 2021, in Riverside, California, was part of a larger pattern of deceptive sales conduct that Defendants engaged in throughout the country, with affiliates under different names.

132.    Defendants, and their affiliates, host similar events at hotels or other similar facilities using similar sales tactics, which are advertised through similar direct mail campaigns or though telephonic and internet campaigns.

133.    The only major change in Defendants' sales tactics is that they operate under different names at different times, including, but not limited to, Consumer Law Protection, LLC, Square One Development Group, and other entities.

134.    Corporate names are typically changed periodically to avoid negative publicity, such as the F rating of THS with the Better Business Bureau in Colorado Springs. [11]

135.    Regardless of which name or corporate identities Defendants use, they continue to use the same salespeople, sales tactics, and organization structure.

136.    They also use the same or similar addresses for conducting business and are represented by the same lawyers.

137.    Defendants were ready to present virtually the same presentation, with the same materials, direct mail flyers, and personnel for an event scheduled in Anchorage, Alaska for October 13-14, 2021.

---

[11] https://www.bbb.org/us/co/colorado-springs/profile/timeshare-transfer/timeshare-help-source-0785-87382988  last viewed April 1, 2022.

138.   Both the Riverside presentation, and the one scheduled in Anchorage a month

later, employed direct marketing flyers advertising a free meal for two, a free shopping card, and

a free informational sessions where timeshare owners could learn how to improve their timeshare

experience, or exit their timeshare, and made the claim that timeshare owners could learn how to

permanently eliminate the maintenance fees for their timeshares.

139.   At an earlier Anchorage presentation in May of 2021, THS and affiliates also

included the same personnel and advertised the same three choices that timeshare owners

supposedly have for their timeshares. (*See, e.g.* Exhibits, B, D at ¶'s 3, 4, 8 Fig.1, 9, Figures 2

and 3, 19 Fig 11, and 26 Fig 15.)

     1.   do nothing and keep paying for something you're not using or not utilizing,

     2.   optimize your timeshare ownership and maximize your investment, or

     3.    exit gracefully and painlessly regardless of your situation.

140.   Plaintiff alleges that the flyers additionally shared other, almost verbatim

language.

141.   In an interesting twist, when Defendants appeared for the October presentation in

Anchorage, a mere month after the presentation in Riverside, California, Defendant Sharod

Brown was approached by Alaska Troopers who served him with a subpoena to testify about the

scam tactics of Defendants.

142.   Upon being served with a subpoena Defendant Brown immediately telephoned

Defendant Scott Jackson (the phone identification listed Defendant Scott Jackson as "Scott

Square One,") another of the entities involved in the deceptive marketing practices, but the same

Scott Jackson as listed as Director and Vice President of THS, and Scott Jackson identified

himself as a vice-president of THS when he spoke with an Alaskan Trooper investigating the same deceptive practices of THS in Alaska.

143.    Sales team members of THS who were present in Alaska for the October presentation, admitted that they travel from town to town, making essentially the same sales pitch to consumers across the country, but stated that their job was to sell timeshare exit services, the sales team denied any knowledge how, or if, Defendants actually did get consumer out of their contracts.[12]

144.    Colorado Revised Statutes, Section 6-1-102(11.7)(a) defines a timeshare resale entity as follows:  "Time share resale entity" means any person who, either directly or indirectly, engages in a time share resale service."

145.    CRS Section s-1-102 (11.8) states:´"Time share resale service" means any of the following activities, engaged in directly or indirectly and for consideration, regardless of whether performed in person, by mail, by telephone, or by any other mode of internet or electronic communication, unless performed by a person or entity that, pursuant to paragraph (b) of subsection (11.7) of this section, is exempted: (a) The sale, rental, listing, or advertising of, or an offer to sell, rent, list, or advertise, any resale time share; (b) The purchase or offer to purchase any resale time share; (c) The transfer or offer to assist in the transfer of any resale time share; or (d) The invalidation or an offer to invalidate the purchase or ownership of any resale time share or the purchase of any time share resale service."

---

[12] *See, Alaska v. Consumer Law*, complaint at page 30, *supra*.

146.    Colorado deceptive trade practices, as set forth in C.R.S. §6-1-105, provides that a person engages in a deceptive trade practice when (among other things), in the course of the person's business, vocation, or occupation, the person:

 a. knowingly makes a false representation as to affiliation, connection, or association or certification by another;

 b. uses deceptive representations. . . in connection with goods or services;

 c. Advertised goods, services or property with intent not to sell them as advertised;

 d. Makes false or misleading statements of fact concerning the price of goods, services ….

 e. Employs "bait and switch" advertising, which is advertising accompanied by an effort to sell goods, services, or propertyother than those advertised or on terms other than those advertised and which is also accompanied by one or more of the following practices:

  i. Refusal to show the goods or property advertised or to offer the services advertised;

 f. Fails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction;

 g. Fails, in connection with any solicitation, oral or written, to clearly and prominently disclose immediately adjacent to or after the description of any

item or prize to be received by any person the actual retail value of each item

or prize to be awarded…

147.    Colorado further regulates specifically timeshare exit and resale transfer

agreements under the deceptive trade practices and C.R.S.§ 6-1-703.5.

148.    Plaintiff asserts that the individually named Defendants were jointly and severally

personally responsible for the deceptive marketing tactics employed to scam Plaintiff out of over

$36,000.00, through misrepresentations made in the presentation, the misrepresentations and lies

made to Plaintiff subsequent to the presentation, failure to cancel the timely cancellation, and

other knowingly deceptive misrepresentations regarding failing to return Plaintiffs' payment for

ostensibly purchasing Interval International points, when Defendants acknowledged that no such

agreement had been signed by Plaintiff.[13]

149.    Plaintiff alleges Defendants, jointly and severally, engaged in conduct creating a

likelihood of confusion or of misunderstanding that misled Plaintiff with respect to the

presentation made to Plaintiff as well as the one-on-one after presentation fraudulent

representations made by Defendants.

150.    Plaintiff asserts that Defendants, jointly and severally, engaged in using or

employing deception, fraud, false pretense, false promises, misrepresentation, and knowingly

concealing, suppressing or omitting material facts with the intent that Plaintiff rely upon the

---

[13] C.R.S. 6-2-104. Personal responsibility. (1) Any person who, either as director, officer, or agent of any firm or corporation or as agent of any person violating the provisions of this article, assists or aids, directly or indirectly, in such violation shall be responsible equally with the person, firm, or corporation for which he acts. (2) In the prosecution of any person as officer, director, or agent, it shall be sufficient to allege and prove the unlawful intent of the person, firm, or corporation for which he acts.

concealment, suppression, or omission, which Plaintiff did, with respect to the representations made to Plaintiff on September 9, 2021, and in the subsequent months of continued false promises, misrepresentations.

151.    Plaintiff alleges that the FTC, State of Colorado and California, all have rules, regulations and statutes which prohibit individuals, and business entities engaged in direct marketing solicitations from making knowing misrepresentations, in mail solicitations, telephonic and internet communications, as well as during face-to-face meetings with consumers.

152.    Plaintiff alleges that she cancelled, in a timely manner, the documents executed during the presentation on September 9, 2021.

153.    This cancellation was acknowledged by Defendant Kirkpatrick (*See*, Exhibit I)

154.    However, even after receipt of the cancellation Defendants continued to make false misrepresentations that would lure Plaintiff into continuing with them by promising her Defendants would be able to maintain her Wyndham ownership interest and prepay all future maintenance fee by the payments made to Defendant THS.[14]

155.    Plaintiff asserts that Defendants misrepresented the fact that she could receive a refund of her payment and, pursuant to Section 18 of the FTC act, 15 U.S.C. § 57a(d)(3), and 16 C.F.R. § 429.1, a violation of the Cooling-Off Rule constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

---

[14] 16 C.F.R. § 429.1(e) prohibits the seller from misrepresenting in any manner the buyer's right to cancel. 16 C.F.R. § 429.1(f); requires the seller to honor any valid notice of cancellation by a buyer and, within 10 business days after receipt of such valid notice, to refund to the buyer all payments made under the contract. 16 C.F.R. § 429.1(g).

156.    A violation of the Cooling-Off Rule made with the knowledge required by Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), is subject to monetary civil penalties of up to $46,517 for each violation.

157.    Defendants, in violation of Colorado's Deceptive Practices Act, in violation of California's Deceptive Practices Civil Code Section 1770, *et seq.* , and in violation of CFR § 429.1 (also known as the cooling off period) with actual knowledge, were recklessly indifferent, or knew that it was highly probable that all Defendants, including affiliates acting through Defendants, were engaging in unfair or deceptive acts or practices.

158.    Plaintiff additionally contends that, pursuant to C.R.S. § 6-7-103 (1) A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person engages in one or more of the following activities in connection with the advertisement or sale of a time share or the provision of a time share resale service: (a) [m]isrepresents: (I) The investment, resale, or rental value of any time share; (II) The conditions under which a purchaser may exchange the right to use accommodations or facilities in one location for the right to use accommodations or facilities in another location; or (III) The period of time during which the accommodations or facilities contracted for will be available to the purchaser; (b) Fails to allow any purchaser a right to rescind the sale of a time share or a time share resale service within five calendar days after the sale;

159.    Plaintiff asserts that the individually named employees, officers and directors of THS, are liable for the unfair or deceptive acts or practices that they had some knowledge were unfair or deceptive and that they participated in or had the authority to control those practices with Plaintiff.

**WHEREFORE**, Plaintiff, on her own behalf and on behalf of the Class, pray for entry of judgment jointly and severally against all named Defendants, and Does 1-50, and awarding Plaintiff and the Class compensatory damages, statutory damages, treble damages, punitive damages, and reasonable attorney's fees and costs; and such other and further relief as this Court deems just and proper.

<u>**SECOND CLAIM FOR RELIEF**</u>
**EMPLOYMENT OF A DEVICE, SCHEME OR ARTIFICE TO DEFRAUD**

160.    Plaintiff incorporates by reference the preceding paragraphs as if set forth with full particularity herein.

161.    Plaintiff asserts on her behalf, and on behalf of all Class Members, that Defendants and Does 1-50, by engaging in conduct described above, directly or indirectly, in the offer or sale of timeshare securities, by the use of the means or instruments of transportation or communication in interstate commerce, or by use of the mails, with scienter, employed devices, schemes, or artifices to defraud customers, including Plaintiff and other Class Members.

162.    Plaintiff alleges that by reason of the foregoing, Defendants and Does 1-50, directly or indirectly, violated, and unless restrained and enjoined by this Court, will continue to violate Section 17(a)(l) of the Securities Act (15 U.S.C. § 77q(a)(l)).

163.    Section 1036(a)(1)(B) of the Consumer Financial Protection Act prohibits "unfair" acts or practices. 12 U.S.C. § 5536(a)(1)(B). An act or practice is unfair if it causes or is likely to cause consumers substantial injury that is not reasonably avoidable and is not outweighed by countervailing benefits to consumers or to competition. 12 U.S.C. § 5531(c)(1).

164.   Plaintiff contends that Defendants actions, along with the affiliate's actions, constitute unfair practices or acts which have caused Plaintiff, and Class Member substantial injury.

165.   Plaintiff further contends that Defendants, and its affiliates actions in misrepresenting Defendants services constitute a violation of 15 U.S.C. § 45; "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful."

166.   Plaintiff asserts that Defendants' repeated conduct in misrepresenting the nature and abilities to fulfill the promises made in the flyer, telephone conversations, presentations and face-to-face communications, constitutes unfair and illegal and fraudulent business practices within the meaning of the Colorado, California and Federal Deceptive Practices Acts.

167.   Plaintiff asserts on her behalf and on behalf of the Class Members, that Defendants have violated the provisions of section 1036(a)(1)(B) of the CFPA which prohibits "abusive" acts or practices. 12 U.S.C. § 5536(a)(1)(B).

168.   An act or practice is abusive if it materially interferes with the ability of a consumer to understand a term or condition of a consumer financial product or service. 12 U.S.C. § 5531(d)(1).

169.   Additionally, an act or practice is abusive if it takes unreasonable advantage of the inability of the consumer to protect his or her interests in selecting or using a consumer financial product or service. 12 U.S.C. § 5531(d)(2)(B).

170.   Upon information and belief, Defendants by use of a scheme, artifice or devise engaged in deceptive, unlawful, and illegal sales presentations, and communications to defraud

Plaintiff and Class Members out of millions of dollars, and further incentivized Defendants

employees to engage in those practices in order to obtain additional sales by any means possible,

and the employees compensation and bonuses were based upon the number and/or volume of

consumer closing sales.

**WHEREFORE**, Plaintiffs, on her own behalf and on behalf of the Class, pray for entry

of judgment jointly and severally against Defendants, and awarding Plaintiff and the Class

compensatory damages, statutory damages, treble damages, temporary and permanent injunctive

relief, civil forfeitures, restitution for consumer pecuniary losses, punitive damages, and

reasonable attorney's fees and costs; and such other and further relief as this Court deems just

and proper.

<u>**THIRD CLAIM FOR RELIEF**</u>
**NEGLIGENCE**

171.    Plaintiff incorporates by reference the preceding paragraphs as if set forth with

full particularity herein.

172.    Plaintiff on her own behalf, and on behalf of all Class Members, assert that

Defendants owed independent duties of care to Plaintiff and Class Members to act in good faith.

173.    Plaintiff asserts that Defendants owed a duty of care to abide by the terms of the

laws, rules and regulations regarding resale, and/or exit of timeshare properties as set forth in

California statutes, Colorado statutes and by the FTC.

174.    Plaintiff alleges that all Defendants engaged in actions which breached these

duties of care by engaging in unethical misrepresentations of the truth behind Defendants scheme

to secure payment of their services and providing no results for the payments.

175. Plaintiff further contends that all Defendants further breached these duties by intentionally and/or negligently deceiving Plaintiff and Class Members of the value of Defendants services by using inflated numbers showing increases in maintenance fees based upon worthless, invalid speculation with the desired effect of scaring Plaintiff and Class Members to secure Defendants' services at exorbitant prices.

176. Plaintiff alleges that Defendants received a valid cancellation, as allowed by 16 C.F.R Part 429, and Defendants continued to pursue Plaintiff and dissuade her by negligent, and intentional misrepresentations that Plaintiff could prepay her Wyndham timeshare maintenance fees for an unlimited use and unlimited amount of future time.

**WHEREFORE**, Plaintiff, on her own behalf and on behalf of the Class, pray for entry of judgment jointly and severally against Defendants in a sum not less than $900,000,000.00, and awarding Plaintiff and the Class compensatory damages, statutory damages, treble damages, temporary and permanent injunctive relief, civil forfeitures, restitution for consumer pecuniary losses, punitive damages, and reasonable attorney's fees and costs; and such other and further relief as this Court deems just and proper.

## FOURTH CLAIM FOR RELIEF
### BREACH OF CONTRACT

177. Plaintiff incorporates by reference the preceding paragraphs as if set forth with full particularity herein.

178. Plaintiff asserts on her own behalf, and on behalf of all Class Members that Defendants entered into contracts with Plaintiff and Class Members, not allowing them time to review the contract with legal assistance even though the contract stated they could have "legal

advise may be given by an attorney assigned to your file after you have received your letter of

engagement."

179.    Plaintiff contends that the failure to allow consumers and Class Members the

opportunity of securing independent legal counsel, or providing legal counsel to provide advise,

constituted a breach of contract for the ability of securing their own legal counsel which is a

violation of the FTC provisions, Colorado and California laws.  Furthermore, Plaintiff states that

Defendants breached the contract in that the contract provided that the consumer had been

"provided an appropriate length of time and opportunity to carefully review this Agreement

before signing," when, in fact, one of the schemes and tactics of Defendants was to pressure the

attendees to sign immediately because this opportunity was only open for the date they were in

attendance and the law was changing and the attendees would be unable to secure this

opportunity unless they singed immediately.

180.    Plaintiff alleges that she was not allowed any time within which to consult an

attorney, and was coerced into signing documents, and further the requirement that the contract

be signed and paid for on the date of the presentation, even though the contract states that the

consumers confirm that they have been provided with a copy of "all documents that in total

comprise the entire Agreement," neither Plaintiff or other Class Members received all of the

documents on the date of attendance.

181.    Plaintiff asserts on her behalf and on behalf of the Class Members, that case law

allows imposition of punitive damages for actions constituting malice, fraud, or the wanton

disregard for the rights of others. (*Hal Taylor Assocs v. Unionamerica, Inc*, 657 P.2d 743, 750

(Utah 1982)).

182.   Plaintiff contends, upon information and belief, that Defendant THS management encouraged the theft of Plaintiff's money by outrageous demands on employees, and executive officers being fully aware of the fraudulent activity transpiring under various programs to boost profits.

183.   Plaintiff proffers that the illegal activity by Defendants, including officers and directors of the company, and their corporate intent to deprive Plaintiff and Class Member of their money and timeshare property, requires imposition of punitive damages.  Plaintiff additionally contends that likewise THS's failure to implement tighter security and oversight of corporate activities, coupled with its activation of programs, presentations, engaging in similar activities with affiliates, not only encouraged the illegal activity, but also rewarded the activity of deceptive trade practices, calls for punitive damages.

**WHEREFORE**, Plaintiff, on her own behalf and on behalf of the Class, pray for entry of judgment jointly and severally against Defendants in a sum of not less than $900,000,000.00, and awarding Plaintiff and the Class compensatory damages, statutory damages, treble damages, temporary and permanent injunctive relief, civil forfeitures, restitution for consumer pecuniary losses, punitive damages in an amount of two billion dollars, and reasonable attorney's fees and costs; and such other and further relief as this Court deems just and proper.

### FIFTH CLAIM FOR RELIEF
### BREACH OF IMPLIED CONTRACT

184.   Plaintiff incorporated by reference the preceding paragraphs as if set forth with full particularity herein.

185.   Plaintiff alleges for herself and on behalf of Class Members that providing private and confidential information to Defendants, and Defendants receipt of said information,

constituted an implied contract with Defendant whereby Defendants were obligated to take reasonable steps to secure and safeguard that information, and not use the information for other than its intended use.

186.    Plaintiff asserts that a portion Plaintiff and Class Members services purchased from Defendants necessarily included compliance with industry-standard measures with respect adherence to laws and regulations regarding the collection and safeguarding of Plaintiffs funds and private and confidential information.

187.    Because Plaintiff and Class Members were denied privacy protections that they paid for and were entitled to receive, Plaintiff and Class Members incurred actual monetary damages in that they overpaid for the services purchased from Defendants, including the overcharges on their accounts, failure to account for the money received, failure to comply with federal and state laws regarding deceptive trade practices and accounting to the consumer on the use of their funds, and Defendants failure to comply with these industry and legal standards constituted a breach of implied contract.

188.    Plaintiff and Class Members have suffered additional injury in fact and actual damages, including monetary losses, arising from unauthorized activity regarding their timeshare ownership, bank fees charged to Plaintiff and the Class Members for the payment of services to Defendants that the Plaintiff and Class Members never received.

189.    Plaintiff and Class Members suffered additional damages arising from the costs associated with the necessity to keep paying maintenance fees when Defendants failed to perform the tasks contracted for, or incurred attorney's fees and other costs to return their timeshare to its status quo ante prior to Defendants breach of implied contract to perform the

duties Defendants portended to perform, including Defendants wrongful conduct, particularly given the incidents of actual misappropriation from Class Members,' as detailed above.

190.    A meeting of the minds/implied contract occurred, as Plaintiff and Class Members agreed to provide their fees which Defendants required in exchange for Defendant's agreement to, *inter alia*, provide services and otherwise take reasonable steps to perform the services contracted for relative to the various timeshare alternatives.

191.    Without such implied contracts, Plaintiff and Class Members would not have provided their private and confidential information, and exorbitant fee to Defendants.

192.    Plaintiff alleges that Defendants failed to take reasonable steps to safeguard Plaintiff's and Class Members' private and confidential information, and that as a result thereof, Defendants allowed potentially unauthorized access to Plaintiff's and Class Members' private and confidential information and failed to take reasonable steps to safeguard that information, Defendants breached their implied contracts with Plaintiffs and Class Members.

193.    Plaintiffs assert that as a result of Defendant's breach, Plaintiff and Class Members suffered damages in the form of (i) improper disclosure of their private and confidential information; (ii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft by Defendants cavalier approach to engaging in fraud causing Plaintiff and Class Members the value of their time spent mitigating the Defendants theft and/or the increased risk of identity theft and/or identity fraud as well as deprivation of the value of their private and confidential information, for which there is a well-established national and international market.

## SIXTH CLAIM FOR RELIEF
### DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

194.    Plaintiff incorporates by reference the proceeding paragraphs as if set forth will

full particularity herein.

195.    The Declaratory Judgment Act ("DJA") states:

In a case of actual controversy within its jurisdiction ... any court of the
United States, upon the filing of an appropriate pleading, may declare the
rights and other legal relations of any interested party seeking such
declaration, whether or not further relief is or could be sought. Any such
declaration shall have the force and effect of a final judgment or decree
and shall be reviewable as such. 28 U.S.C. § 2201(a).

196.    In the case at hand, there is an actual controversy between the parties of sufficient

immediacy and reality to warrant the issuance of a declaratory judgment and injunctive relief,

due to the imminence of harm facing Plaintiff and Class Members.

197.    As set forth above, Class Members have already suffered losses, theft of their

money by Defendants, and damages as a result of the Defendants deceptive scams and

defrauding Class Member and the Defendant perpetrators are still in control of Class Members'

private and confidential information, and continuing to advertise the deceptive flyers, telephone

communications and perform their presentations defrauding potential future victims.

198.    Plaintiff seeks a declaration that Defendants have breached those contracts

between those entities and Plaintiff and Class Members by allowing unauthorized

misrepresentations by individuals who were allowed with corporate guidance, to defraud

Plaintiff and Class Members, and to have continued access to personal financial data, an/or

authorized parties engaged in fraudulent activities in accessing and misusing fiduciary,

confidential information.

199.    Such action continues as in Plaintiff's case where Defendants, knowingly, intentionally and with malice aforethought, stated relative to the Wyndham class action, that they represented Plaintiff and were her attorneys, and used a power of attorney that had been revoked six months earlier by Plaintiff and enrolled her in the class actions which would have terminated her timeshare, which Plaintiff had repeatedly informed Defendants that she had no intention of doing.

200.    Plaintiffs further seek a declaration, and injunction prohibiting Defendant from engaging in further business operations, that due to the imminence and likelihood of harm to Plaintiff and Class Members, Defendants THS, as well as the named individuals and all employees of Defendants be ordered to pay for mitigation, restitution, damages, punitive damages and attorneys' fees.

**WHEREFORE**, Plaintiff, on her own behalf and on behalf of the Class, pray for entry of judgment jointly and severally against Defendants, and awarding Plaintiff and the Class compensatory damages, statutory damages, treble damages, temporary and permanent injunctive relief, civil forfeitures, restitution for consumer pecuniary losses, punitive damages, and reasonable attorney's fees and costs, precluding every individual Defendant from further engagement of these unlawful marketing and practices; and such other and further relief as this Court deems just and proper.

### SEVENTH CLAIM FOR RELIEF
### CONVERSION

201.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

202.    Plaintiff and members of the Class entered into deceptive and fraudulent agreements with Defendants whereby they deposited funds with Defendants for services to be performed by Defendants.

203.    Plaintiff contends that Defendants used Plaintiffs confidential information to secure fees for services Defendant never intended to perform, and by law said services would have been illegal and impossible to perform, and without Plaintiff's knowledge or consent Defendants engaged in acts which Plaintiff had expressly prohibited.

204.    Plaintiff contends that the money she paid Defendants was for the express purpose of **optimizing** her timeshare by paying in advance all future maintenance fees with Wyndham Resorts, but which fees Defendants converted to their personal use.

205.    Plaintiff asserts that even after Defendant Dan Human confessed that Plaintiff had not signed any agreement for the purchase of Interval International points (*see*, Exhibit M), and there was no valid contract, Defendants continued to refuse to refund Plaintiff's money and illegally converted said fees to their personal use.

206.    Plaintiff asserts that Defendants intentionally asserted control over the assets belonging to not only Plaintiff, but to thousands of other Class Members, many of which can be identified in the Colorado Spring BBB complaints lodged against Defendants for the illegal conversion of their money. (*See*, Exhibit A)

207.    Plaintiff alleges that Defendants exercised dominion and control over the fees Plaintiff and Class Members were charged, including, but not limited to fees for services of termination of timeshares, which were never performed by Defendants, charges incurred by Class Members to pay the exorbitant fees charged by Defendants for services never rendered.

208.    Plaintiff contends that the interference by Defendants deprived Plaintiff and Class Members of possession of use of the money and available use of their personal property in question, and Defendant has refused to return the theft, conversion, or existence of the personal property constituted an act of intentional malice.

209.    Plaintiff asserts the conversion of her funds, and those of Class Members and control exerted over their personal property by Defendants caused them to suffer damages, anxiety, stress, loss of personal property, loss of time, payment of late fees to timeshares and payment of fees which Plaintiff and Class Members were not otherwise obligated to pay, has caused Plaintiff and Class Members damages.

210.    Upon information and belief, executives and employees of Defendants received bonuses in the millions of dollars for their participation, direction and consent for Defendants actions which caused Plaintiff and Class Members to become victims of Defendants fraudulent activities.

211.    Defendants and their employees and affiliates have been unjustly enriched at the expense of Plaintiff and the Class and Defendants retention of this benefit under the circumstances would be inequitable.

212.    Plaintiff seeks an order requiring Defendants to make restitution to Plaintiff and each Class Member, including a clawback, or disgorgement provision for all officers, directors, and anyone who received a bonus of any nature who profited personally from the illegal behavior, including the individually named Defendants.

**WHEREFORE**, Plaintiff, on her own behalf and on behalf of the Class, pray for entry of judgment jointly and severally against Defendants, and awarding Plaintiff and the Class

compensatory damages, statutory damages, treble damages, temporary and permanent injunctive

relief, civil forfeitures, restitution for consumer pecuniary losses, punitive damages, and

reasonable attorney's fees and costs; and such other and further relief as this Court deems just

and proper.

## EIGHTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT

213.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as

though fully set forth herein.

214.    As a result of Defendants fraudulent activities, Defendants employees and

individually named Defendants received incentive payments, bonuses, and an increase in the

value of participation in the fraudulent activities.

215.    Plaintiff and Class Members lost money, time, suffered anguish, had improper

fees imposed on accounts, suffered higher interest rates, and other damages as a result of

Defendants activities.

216.    Defendants have been unjustly enriched at the expense of Plaintiff and Class

Members and the retention of these benefits under the circumstances would be inequitable.

217.    Plaintiff and Class Members seek an order requiring Defendants to make

restitution to Plaintiff and Class Members and to disgorge all gains, bonuses, and incentive pay

received from 2018 through the date of trial, and pray for entry of judgment jointly and severally

against each and every Defendant, including Does 1-50, and awarding Plaintiff and the Class

compensatory damages, statutory damages, punitive damages, and reasonable attorney's fees and

costs; and such other and further relief as this Court deems just and proper.

## NINTH CLAIM FOR RELIEF
**Civil Violation of Racketeer Influenced Corrupt Organizations Act**
**15 U.S.C. §1972 *et seq*.**

218.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

219.    Plaintiff contends that Defendants conspired together with affiliates to obtain financial rewards by implementing the actions noted above to fraudulently deprive Plaintiff and Class Members of their assets, name, privacy, *etc*.[15]

220.    Section 18 U.S.C. § 1962 (c) prohibits any person from conducting the affairs of an enterprise through a pattern of racketeering.

221.    At all relevant times, each Defendant is a person within the meaning of 18 U.S.C. §1961(3) and 1962(c).

222.    Plaintiff and each Class Member are each a person within the meaning of 18 U.S.C. § 1964(c).

223.    Each and every Defendant is a person capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3).

224.    Because of each and every of Defendants' violations of Racketeer Influenced & Corrupt Organizations Act ("RICO"), Plaintiffs were financially injured as a result to their business, money and/or property.

225.    Each and every Defendant violated 18 U.S.C. § 1962(c) by the acts described in the prior paragraphs, and as further described below.

---

[15] No connection to organized crime is required for a civil RICO action. *Crocker Nat. Bank v Rockwell International Corp*., 555 F Supp 47 (1982, ND Cal.); *Wilcox v Ho-Wing Sit*, 586 F Supp. 561 (1984, ND Cal.).

### The RICO Enterprise

226.    The Defendants and their co-conspirators are a group of "persons" associated together in fact for the common purpose of carrying out an ongoing criminal enterprise, as described in the foregoing paragraphs of this Complaint, and attached Complaints.

227.    These Defendants, and their affiliates, form this association in fact for the common and continuing purpose described herein and constitute an enterprise within the meaning of 18 U.S.C. § 1961(4) engaged in the conduct of their affairs through a continuing pattern of racketeering activity.

228.    There may be other members of the enterprise who are unknown at this time, but which will be uncovered during discovery.

229.    At all material times, the enterprise has engaged in, and their activities have affected interstate and foreign commerce within the meaning of 18 U.S.C. § 1962(c).

### Pattern of Racketeering Activity in General

230.    Defendants, each of whom are persons associated with, or employed by the enterprise, did knowingly, willfully and unlawfully conduct or participate, directly or indirectly in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §1961 (1), 1961(5), and 1962(c).

231.    The racketeering activity, through the use of mail fraud (§1341), wire fraud (§1343) and financial institution fraud (§1344), was made possible by Defendants' regular, systematic and repeated use of the services of the enterprise, including, but not limited to repeated access to Plaintiff and Class Members confidential and private information, social security numbers, driver's license information, *etc.*

232.    Defendants had the specific intent to engage in the substantive RICO violations alleged herein.

233.    Predicate acts of racketeering activity are acts which are indictable under provisions of U.S.C. § 1961(1)(B). Defendants each committed at least two such acts or else aided and abetted such acts.

234.    The acts of racketeering were not isolated, but rather the acts of Defendants were related in that they had the same or similar purpose and result, participants, victims and method of commission.

235.    Further, the acts of racketeering by Defendants have been continuous. There was repeated conduct during a period of time beginning in approximately in 2018, and there is a continued threat of repetition of such conduct on a monthly basis, if not more often.

236.    Defendants mandated that employees must reach a certain goal of signing new consumers. Some employees have acknowledged the pressure of sales by management. This created a culture of bullying and fear from managers to the lower-level employees, forcing these individuals to choose between ethics and a paycheck.

**Pattern of Racketeering: Violation of 18 U.S.C. § 1341**

237.    18 U.S.C. § 1341 is designed to protect citizens from fraudulent activities sent through the mail, via the United States Postal Service or through private carrier.

238.    Defendants devised a scheme to defraud Plaintiff and Class Members through fraudulent, misleading flyers and presentations regarding exiting timeshare properties, and groomed employes in the skills of deceptive trade practices, misleading timeshare owners into entering exorbitant contracts, many of which were illegal of being performed.

239.    In pursuing this scheme to defraud Plaintiff and Class Members, Defendants regularly prepared and sent out through the Postal Service and other private carriers flyers advertising free information on not paying any future timeshare maintenance fees, and offering a free meal for two at a presentation regarding timeshares, and at the end of the presentation the recipient would receive a free gift card.

240.    Defendants would look up Plaintiff and Class Members address and information without their consent and mail the flyers through the Postal Service or private carrier to the Plaintiffs address, or determine an email address or use the telephone to call Class Members to invite them to a free presentation.

241.    Defendants would knowingly ignore attendees who were not interested in Defendants services and employ high pressure sales tactics to take advantage of individuals who were not familiar with high pressure sales tactics and were not aware of court actions against Defendants for delivering fraudulent paperwork through Postal Service or private carrier.

242.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover treble damages plus costs and attorneys' fees from each and every Defendant.

**Pattern of Racketeering: Violation of 18 U.S.C. § 1343**

243.    18 U.S.C. § 1343 is designed to protect citizens from fraudulent activities sent by wire, radio or television transmission.

244.    Defendants devised a scheme to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises did cause to be transmitted by means of wire communication in interstate commerce for the purpose of executing said scheme to defraud.

245.    In pursuing this scheme to defraud Plaintiff and Class Members, Defendants consistently caused for false documentation accounts to be opened up in purporting to comport with the contracts executed by Plaintiff and Class Members and in cases unilaterally transfer money, deeds, or other items of Plaintiffs' ownership from one account to the other without Plaintiffs' of Class Members authorization, knowledge or consent.

246.    Many of the contracts opened by Defendants included monthly charges that Defendants reaped the benefit thereof.

247.    Neither Plaintiff, nor Class Members authorized the opening of false accounts, or having transferred to Defendants deeds to timeshares and did not authorize the transfer of money, or deeds without completing the contract terms leaving Plaintiff with pending maintenance payments, or in other instances causing timeshare companies to initiate foreclosure or other legal proceedings against the Class Members causing distress to Plaintiff and Class Members.

248.    Defendants further caused for fraudulent communications with timeshare companies, for example, without authorization Defendants held themselves out as Plaintiff's attorney and attempted to have Plaintiff's timeshare terminated by fraudulently attaching her name to a class action which would terminate her interest and the loss of the money she paid for ownership of the timeshare.

249.    Plaintiff and Class Members accounts, without their authorization, were manipulated to Defendants benefit, and without accomplishing the contracted for service, causing fraudulent communication to be sent over the wire, though the mails, or internet.

250.    Pursuant to 18 U.S.C. § 1964(c), Plaintiff and Class Members are entitled to recover treble damages plus costs and attorneys' fees from each and every Defendant.

**Predicate Act: Use of Mail Fraud to Defraud in Violation of 18 U.S.C. § 1341**

251.    Defendants committed acts constituting indictable offenses under 18 U.S.C. § 1341 in that they devised a scheme or artifice to defraud Plaintiff and Class Members and the greater public by means of false or fraudulent pretenses, engaging with affiliates who use the same presentations, flyers, calculations and blatant lying, deceit and false pretenses in Defendants operations.

252.    Defendants did place in an authorized depository for mail, or did deposit or cause to be deposited with private commercial interstate carriers and knowingly caused to be delivered by the U.S. postal service, letters, billing statements, credit cards and other matters, in violation of 18 U.S.C. § 1341, or aided and abetted in such criminal acts.

253.    Defendants caused delivery of possibly millions of false documents knowingly to Plaintiff and Class Member and to the entire class from as early as 2018 to the present, using the mail system to transmit fraudulent information concerning Defendants ability to perform services that Plaintiff and Class Members could not perform on their own, and caused the distribution of "gift cards" that failed to work.

**Predicate Act: Use of Wire Fraud to Defraud in Violation of 18 U.S.C. § 1343**

254.    Defendants committed acts constituting indictable offenses under 18 U.S.C. § 1343 in that they devised a scheme or artifice to defraud Plaintiff and Class Members and the greater public by means of false or fraudulent pretenses.

255.   Defendants did create accounts for Class Members which were funded on occasion by the transfer of moneys and funds over the wire from Plaintiff and Class Members accounts to the new accounts for services they never completed, nor did they return the Class Members fees pursuant to a guarantee of a full refund if Defendants could not complete the services contracted for, in violation of 18 U.S.C. § 1343, or aided and abetted in such criminal acts.

256.   Defendants caused for the illegal transfer of moneys on numerous accounts, from as early as 2018 to the present, using wire transfers to transmit fraudulent transfer requests and information concerning the Class Members.

**Continuity of Conduct**

257.   Defendants' violations of these laws as set forth herein, each of which directly and proximately injured Plaintiffs and Class Members, constituted a continuous course of conduct from as early as 2018 to the present.

258.   These acts were intended to obtain money from Plaintiffs and Class Members, and to increase company profits through false representations, fraud, deceit, and other improper and unlawful means.

259.   Therefore, violations were a part of a pattern of racketeering activity under 18 U.S.C. § 1961 (1) and (5).

260.   On information and belief, Defendants have conducted and/or participated directly and/or indirectly, in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activity as defined in violation of 18 U.S.C. § 1962(c).

261.    The unlawful actions of Defendants, each of them, have directly, illegally, and proximately caused and continue to cause injuries to Plaintiff and Class Members in their business and property.

262.    Pursuant to 18 U.S.C. § 1964 (c), Plaintiff and Class Members are entitled to recover treble damages plus costs and attorneys' fees from each and every Defendant.

**WHEREFORE**, Plaintiffs, on their own behalf and on behalf of the Class, pray for entry of judgment jointly and severally against Defendants, and awarding Plaintiff and the Class compensatory damages, statutory damages, treble damages, punitive damages, and reasonable attorney's fees and costs; and such other and further relief as this Court deems just and proper.

<u>**TENTH CLAIM FOR RELIEF**</u>
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

263.    Plaintiff incorporates by reference paragraphs 1-293 as if set forth with full particularity herein.

264.    California[16] and Colorado[17] law requires that the tort of intentional infliction of emotional distress consist of four elements; 1) the Defendants conduct was outrageous and

---

[16] *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 969, 863 P.2d 795 (1993).

[17] A triable issue of fact would exist if there were evidence that the defendants engaged in outrageous conduct with the specific intent of causing severe emotional distress or that the defendants acted recklessly with the knowledge that there was a substantial probability that their conduct would cause severe emotional distress. Although the question of whether conduct is outrageous is generally one of fact to be determined by a jury, it is first the responsibility of a court to determine whether reasonable persons could differ on the question. Restatement (Second) of Torts § 46 cmt. h (1965); *Price v. Federal Express Corp.,* 660 F.Supp. 1388 (D.Colo. 1987); *Meiter v. Cavanaugh,* 40 Colo.App. 454, 580 P.2d 399 (1978). *See also* Colorado Jury Instructions – Civil 3d 23.1 Proof of accompanying physical injury is not required. *Rugg v. McCarty*, 173 Colo. 170, 177, 476 P.2d 753, 756 (1970)

intolerable in that if offended generally accepted standards of decency and morality; 2)
Defendants intended to cause, or acted in reckless disregard of the likelihood of causing,
emotional distress; 3) Plaintiffs suffered emotional distress, and 4) Defendants conduct
proximately caused the emotional distress.

265.    Plaintiff and Class Members have laid out specific instances which meet and
exceed all four requirements of the four prongs of the intentional inflictions of emotional
distress. Plaintiff and Class Members have set forth the great anxiety, anger, frustration and
distress in not getting answers from Defendants, Defendants caviler attitude, keeping Plaintiffs
and Class Members on hold over two hours at a time, and not remedying the situation.
Defendants in fact intentionally inflicted emotional distress by their conduct vis-à-vis the
Plaintiff and Class Members with indifference or specifically with the purpose of inflicting
emotional distress and/or knowing any reasonable person would have known that such would
result and were considered outrageous and intolerable in that they offend against the generally
accepted standards of decency and morality.

266.    In the alternative, Plaintiff and Class Members contend that Defendants caviler
attitude of fraudulently misrepresenting that Defendants were the only ones who could assure the
Plaintiff and Class Members would never have to pay future maintenance payments on their
timeshares is demonstrative of Defendants disregard for the emotional distress suffered by

**WHEREFORE,** Plaintiff, on her own behalf and on behalf of the Class, pray for entry of
judgment jointly and severally against Defendants, and awarding Plaintiff and the Class
compensatory damages, statutory damages, treble damages, punitive damages, and reasonable
attorney's fees and costs; and such other and further relief as this Court deems just and proper.

## ELEVENTH CLAIM FOR RELIEF
### PUNITIVE DAMAGES

267.    Plaintiff incorporates by reference the preceding paragraphs as if set forth with full particularity herein.

268.    Defendants' actions constituted an egregious deviation from the general standard of care.

269.    Defendants knew or should have known that such actions would cause serious financial and emotional harm to Plaintiff and Class Members.

270.    Defendants maliciously continued forging documents, holding themselves out as attorneys, presenting misleading fraudulent deceptive programs with the sole aim of enriching themselves, knowing that the material they were presenting was inaccurate, and refusing to return Plaintiff and Class Members upon request, or honoring cancellations to the detriment of Plaintiff and Class Members.

271.    When Plaintiff repeatedly instructed Defendants that it was never her desire to terminate the Wyndham timeshare, and to cease all activity in that regard, Defendants, nevertheless, continued to include Plaintiff in a separate class action with Wyndham, without her consent or knowledge.

272.    Defendants continued to represent to third parties that they were the attorneys or had a valid power of attorney to conduct business on Plaintiff's behalf, when in fact those were fraudulent representations known by Defendants.

273.    Defendants' actions and conduct were sufficiently egregious to warrant punitive damages.

274.    **WHEREFORE,** Plaintiff, on her own behalf and on behalf of the Class, pray for

entry of judgment jointly and severally against Defendants, and awarding Plaintiff

and the Class compensatory damages, statutory damages, treble damages, punitive

damages, and reasonable attorney's fees and costs; and such other and further relief as

this Court deems just and proper.

**TWELFTH CLAIM FOR RELIEF**
**FRAUDULENT INDUCEMENT**

275.    Plaintiffs incorporate by reference the preceding paragraphs as if set forth fully

herein.

276.    Defendants made representations regarding the following material facts in person

during their pitches:

    a.    That they were associated with, "Proud Partners" with, or accredited by

        established entities such as Wyndham Destinations, RCI, LLC, Interval

        International, Bluegreen Vacations Unlimited, Inc., the American Resort

        Development Association, and the Better Business Bureau.

    b.    Defendants falsely represented that they were working for, or affiliated with,

        reputable timeshare exchanges and developers, and that they are one of the

        few "authorized" or accredited timeshare exit companies.

    c.    That Plaintiffs must act immediately or be stuck with their timeshares forever,

        potentially saddling their children and grandchildren with timeshare

        maintenance fees.

    d.    That the timeshare industry has been working against them to pass legislation

that will limit Plaintiffs' their ability to exit their timeshares and will cause annual maintenance fees to increase exponentially.

    e. That Plaintiffs cannot exit timeshare contracts on their own, and that paying for Defendants' services is the only way consumers can exit their timeshares.

    f. That a full refund would be given if Defendants were unable to secure an exit from the timeshares.

    g. Other false information that was presented in the sales pitches.

277. Defendants knew these misrepresentations were false misleading and constituted deceptive marketing and sales practices when they were being made.

278. Plaintiff relied on Defendants misrepresentations and paid Defendants over $37,000 to help her improve her Wyndham timeshare and pay for future maintenance, which was not accurate or true as Defendants stoking her fear that the timeshare company could place liens on her daughters' home if she failed to enter into the contracts.

279. Based upon Defendants representations, Plaintiffs believed that Defendants were the experts in the industry and were justified in relying on the misrepresentations.

280. Plaintiffs have suffered damages as a result of the false representations made by Defendants, including, but not limited to, a fraudulently induced contract, additional fees and charges by their timeshares, and other damages.

281. Therefore, Plaintiffs are entitled to rescission of the contracts, a disgorgement of profits, and other damages to be proven at trial.

### THIRTEENTH CLAIM FOR RELIEF
**FRAUDULENT TRANSFER - COLORADO UNIFORM FRAUDULENT TRANSFER ACT – C.R.S.A. § 38-8-101 et seq.**

282.    Plaintiffs incorporate by reference the preceding paragraphs as if set forth fully herein.

283.    Plaintiffs have claims for incomplete services and/or guaranteed refunds against Defendants.

284.    Upon information and belief, Defendants have engaged in a practice of transferring money, intellectual property, and other valuable assets from one company to another in a series of entities.

285.    Upon information and belief, Defendants have routinely transferred assets to new companies held by the same small group of owners, or insiders.

286.    Upon information and belief, the Companies that worked with Plaintiffs became insolvent as a result of the transfers to the new individuals and/or entities.

287.     Wherefore, Plaintiffs request the remedies set forth in C.R.S.A. § 38-8-108, including:

    a.   Avoidance of the transfers

    b.   An attachment, garnishment, replevin, note of pendency, and any other provisional remedy that is deemed appropriate,

    c.   A judgment for one and one half the value of any asset transferred or for one and one-half the amount necessary to satisfy the creditor's claim, whichever is less, together with the creditor's actual costs;

    d.   An appointment of a receiver to take charge of any property of the transferees.

288.    Defendants have been skilled in lying not only to Plaintiffs, but to courts of law in order to accomplish their avarice. *See,* for example, the Declaration of Dan Human in the Andrew Perrong Plaintiff, v Timeshare Help Source, LLC, Dan Human, and Eduardo Balderas, Defendants United States District Court for the Easter District of Missouri, (Exhibit R) where Defendant Dan Human states as follows:

1. I am not an employee of Timeshare Help Source.
2. I have never been a paid employee of Timeshare Help Source.
3. I am not, nor have I ever been, a corporate officer of Timeshare Help Source, and I have never owned equity in this company, nor do I know who does.
4. I have never personally controlled, enforced, nor promulgated the corporate policy of Timeshare Help Source, nor supervised anyone who has.

*See also* Dan Human's answer to discovery in the same action, (Exhibit S) where he repeatedly denies ever having been a paid employee of Defendant THS and states:

3. Identify all persons or entities involved in making the outbound calls which Plaintiff received, including, but not limited to, any calls placed to the Plaintiff as more fully described in the Plaintiff's complaint, including the individuals who voiced, edited, or drafted any prerecorded messages, and describe the work of each such person.

ANSWER: Dan Human has never been a paid employee of Timeshare Help Source (hereinafter THS) and therefore lacks specific knowledge of who makes calls or who made the calls alleged in this litigation if they were made.

9. Identify any source of your employment, to include your job description, supervisor, president/CEO, other principals, and/or income attributable thereto, regardless of classification as a volunteer, commissioned salesman, independent contractor, or employee.

**ANSWER:** Objection, this interrogatory is compound in nature, overly broad, burdensome, seeks information that is irrelevant, immaterial, and it is harassing and is private and non-discoverable. Additionally, this interrogatory lacks a specific timeframe. Without waiver of this objection, Dan Human has never been a paid employee of THS, nor a volunteer, commissioned salesman, or independent contractor, and therefore lacks specific knowledge of the facts of this litigation. See Dan Human's affidavit attached to his second motion to dismiss. During the time of the alleged phone calls, Daniel Human was never employed by THS.

4. Please produce all documents related to Defendant Timeshare Help Source, including, but not limited to, all documents evidencing your relationship with Timeshare Help Source.

**RESPONSE:** Objection, this request is compound in nature, overly broad, burdensome, seeks information that is irrelevant, immaterial, privileged, it is harassing and non-discoverable. Additionally, this request lacks a specific timeframe. Without waiver of this objection, Dan Human has never been a paid employee of THS, nor a volunteer, commissioned salesman, or independent contractor; and Human has never owned equity in THS and therefore lacks specific knowledge of the facts of this litigation. See Dan Human's affidavit attached to his second motion to dismiss. During the time of the alleged phone calls, Daniel Human was never employed by THS.

**WHEREFORE,** Plaintiff, on her own behalf and on behalf of the Class, pray for entry of judgment jointly and severally against Defendants, and awarding Plaintiff and the Class compensatory damages, statutory damages, treble damages, punitive damages, and reasonable attorney's fees and costs; and such other and further relief as this Court deems just and proper.

## THIRTEENTH CLAIM FOR RELIEF
### ALL CLAIMS APPLIED TO TRANSFEREES - SUCCESSOR LIABILITY

289.    Plaintiffs incorporate by reference the preceding paragraphs as if set forth fully herein.

290.    Upon information and belief, Defendants have transferred assets to new individuals and/or entities.

291.    Upon information and belief, the successors are mere continuations of Defendants' business.

292.    Upon information and belief, any transfers have been for the purpose of frustrating creditors and avoiding liability.

293.    Wherefore, Plaintiffs request that the claims brought forth herein be applied to all successors at law.

## PRAYER FOR RELIEF

Plaintiffs and Class Members request:

A. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in set forth in Fed.R.Civ.P. 23, and certifying the Class defined herein;

B. Designating Plaintiff as the representative of the Class and their undersigned counsel as Class Counsel;

C. Entering judgment jointly and severally in favor of Plaintiff and the Class and against all named Defendants in a sum adequate to punish Defendants in an amount of one billion dollars ;

D. Entering a declaration that Defendants have breached a contract between them and Plaintiff and Class Members by allowing unauthorized activities depriving and stealing money and property from Plaintiff and Class Members and/or allowed authorized personnel to knowingly misuse, misappropriation, fraudulent representations, and engaging in fraudulent activity with respect to Plaintiffs and Class Members confidential information, and that Defendants be ordered to pay in the form of clawbacks from Defendant and its' employees who profited from the illegal activity;

E. For equitable relief enjoining Defendants, jointly and severally, from engaging in the wrongful conduct complained of herein pertaining to the deceptive trade practices, misrepresentations, conversion, failure to return fees and termination of their conspiracy and RICO actions of Defendants and Defendants affiliates;

F. For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, but not less than $90,000,000.00 for Defendants knowing theft, engagement in a continuous pattern of fraud, conspiracy to commit fraud, identity theft, inaccurate reporting to credit agencies ;

G. For an award of punitive damages;

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial of her claims to the extent authorized by law on her own behalf, and on behalf of all Class Members.

DATED: June 20, 2023.

Christensen Young & Associates, PLLC

*/s/  Steven A. Christensen*
Steven A. Christensen (#5190)
9980 So. 300 West, Suite 200
Sandy, Utah 84070
(801) 676-6447
(888) 569-2786
steven@christensenyounglaw.com